Jeffrey J. Hepworth, ISB No. 3455
J. Grady Hepworth, ISB No. 10364
HEPWORTH LAW OFFICE
2229 W. State Street
P.O. Box 2815
Boise, ID 83701-2815
Telephone: (208) 333-0702
Facsimile: (208) 246-8655
courtservice@idalawyer.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAKE SUMMERS, an individual,<br><br>      Plaintiff,<br><br>v.<br><br>LHC GROUP, INC., a foreign corporation registered and doing business in the State of Idaho,<br><br>      Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, the Plaintiff, Jake Summers, by and through his counsel of record, Hepworth Law Offices, for causes of action against the above-captioned Defendant, hereby states and alleges as follows:

## I.  PARTIES

1. The Plaintiff, Jake Summers (hereinafter referred to as "Plaintiff") is and was at all material times residing in the State of Idaho. At the time Plaintiff was wrongfully terminated by LHC

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

Group, Inc., Plaintiff was principally working out of LHC Group, Inc.'s place of business located at 3356 E. Goldstone Dr. #3360, Meridian, ID 83642.

2. Defendant, LHC Group, Inc. ("LHC" or "Defendant") is a Delaware corporation that is registered and doing business in the State of Idaho. Defendant's registered agent is located at 921 S. Orchard St. Ste. G, Boise, Idaho 83705. Defendant is liable for the actions, omissions, and tortious conduct of its agents, employees, and/or apparent agents.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331. The Plaintiff asserts federal question subject matter jurisdiction under 31 U.S.C. § 3730(h).

4. Jurisdiction and venue are proper in this Court under 31 U.S.C. § 3732 because LHC Group, Inc. transacts business in this judicial district, and the prohibited acts occurred in the State of Idaho. Venue is also proper under 28 U.S.C. § 1391.

5. This Court has supplemental jurisdiction of the state law claims and tortious causes of action asserted herein pursuant to 23 U.S.C. § 1367. The factual basis of the state law claims are identical to the operative facts underlying the federal claims.

## III. GENERAL ALLEGATIONS

6. LHC Group, Inc. organizes medical care and offers medical treatment via home health and hospice services to patients throughout the State of Idaho. LHC Group, Inc. is a "home health agency" as that term is defined under 42 C.F.R. § 440.70 and I.C. § 39-2402(5).

7. LHC Group, Inc. derives a substantial portion of its business income through Medicare and/or Medicaid reimbursements and subsidies. Defendant is subject to licensure and

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

regulation pursuant to Idaho Code Title 39, Chapter 24, and Title 42, Chapter 7 of the United States Code.

8. As a Medicare-Certified home health agency, LHC Group, Inc. is required to participate in the Outcome and Assessment Information Set (OASIS) established pursuant to 42 C.F.R. § 484.55 *et seq*. In order to participate in Medicare and Medicaid home health programs, LHC Group, Inc. must provide periodic "comprehensive assessment" data regarding every patient's health, treatment plans, and demographic information.

9. The OASIS reporting requirements are established and regulated by the Centers for Medicare & Medicaid Services ("CMS.") In turn, CMS and the State of Idaho relies upon the OASIS data to "administer the payment rate methodologies described in §§ 484.215, 484.220, 484.230, 484.235, and 484.240." *See* 42 C.F.R. § 484.250. CMS relies upon an agency's full and accurate provision of data to determine ongoing eligibility and reimbursement rates.

10. CMS also relies upon the OASIS information to formulate Medicare ratings regarding quality of patient care and patient satisfaction. LHC Group, Inc. uses the data published by CMS for purposes of its own advertising. LHC Group, Inc. publishes its CMS ratings for patient satisfaction and quality of patient care on its website and uses the ratings for purposes of marketing and advertising.

11. Federal law specifically requires that "the encoded OASIS data must <u>accurately</u> reflect the patient's status at the time of assessment." *See* 42 C.F.R. § 484.45 (emphasis added).

12. Home health agencies are also required to provide in-depth discharge planning, which requires agencies to provide in-depth data-driven information regarding care and quality. *See* 42 C.F.R. § 484.58.

13. The State of Idaho, by and through the Department of Health and Welfare, is also responsible for the payment and reimbursement of Medicaid and Medicare home health services pursuant to IDAPA 16.03.09.725.

14. Jake Summers was hired by LHC Group, Inc. in approximately November 2018. Mr. Summers initially served in supervisor roles for LHC home care agencies in New Mexico and Colorado. In July 2019, Mr. Summers was promoted to become Area Executive Director for the region overseeing Idaho, including home care agencies located in Twin Falls, Gooding, Meridian, and Coeur d'Alene. Mr. Summers grew up in Idaho, and was eager to be closer to his family. Mr. Summers moved his wife and five children to the Treasure Valley, and bought a home in reliance upon his promotion to the Area Executive Director position.

15. Upon arriving in Idaho, Summers found his region to be in general disarray. Morale was low among many of the providers, and there was very high turnover among medical and nursing staff. Mr. Summers worked diligently between July 2019 and January 2020 to implement effective policies, hire and train new staff, and generally improve the patient-focused culture that the company advertised to its prospective patients.

16. On or about December 30, 2019, Mr. Summers received his annual performance review. Mr. Summers received a positive performance review from his supervisors, and was given a merit-based raise to a salary of $130,000.00 per year (plus bonuses, and other employee benefits). Plaintiff's raise was consistent with the praise and recognition Mr. Summers received from many others in the company for his hard work and dedication to patients and his colleagues.

17. On or about January 17, 2020, Jake Summers discovered for the first time that one of the

LHC Group clinicians was performing patient discharges over the phone. Not only was performing telephone discharges inconsistent with company policy and procedure, more seriously, the company's OASIS reporting practices specifically reported every client discharge to CMS as an "in-person" or "face-to-face" visit. CMS relies upon the number of in-person patient-provider interactions to formulate each home care agency's overall CMS care rating.

18. Furthermore, the State of Idaho requires that certain interactions between home care medical providers and patients occur via "face-to-face encounter" under IDAPA 16.03.09.723. Idaho law requires that "Appropriate documentation must indicate the practitioner who conducted the encounter, and the date of the encounter as described in the CMS/Medicare DME coverage manual."

19. Mr. Summers reasonably believed that reporting the telephone discharges to CMS under the false pretense that they were conducted in-person constituted Medicare fraud, and violations of State and Federal law. By misrepresenting the patient-client interactions, LHC Group was artificially inflating its CMS patient care rating, and thereby may receive additional compensation and reimbursements than it would otherwise be entitled to, as well as potentially unfair and deceptive advertising advantages.

20. When Summers confronted the employee, the clinician grew defensive, and claimed that is how LHC Group had "always" performed discharges. Summers admonished the employee that the practice constituted fraud, and could lead to serious disciplinary and/or legal issues. Summers engaged in further investigation into the fraudulent practice.

21. On January 18, 2020, Summers discussed the practice of telephone discharges with business

manager Laura Pugh. Ms. Pugh also grew defensive, and insisted that the practice was "ok" because Twin Falls Director Bonita Buell had told her that was an acceptable procedure. Despite Summers instructing his subordinates to stop, Ms. Buell and others appeared to disregard his order.

22. During this time, Mr. Summers had been working with LHC Group's upper management and human resources representatives (including Lolanda Brown, Trenee Jenkins, and Nate Smith) regarding ongoing insubordination issues with Ms. Buell. Ms. Buell's apparent insistence that the practice was "proper" reasonably inferred that the practice was being conducted intentionally and fraudulently on a larger scale.

23. On January 20, 2020, Summers brought the CMS compliance issue to the attention of Regional Vice President Trenee Jenkins, as well as Vice President of Compliance Barbara Goodman. Summers reiterated his concern that the practice constituted fraud. By reporting the misrepresentation to his supervisors in good faith, Summers engaged in a protected activity under 31 U.S.C § 3730(h)(1).

24. When Summers arrived to work on January 22, 2020, his supervisor, Nate Smith, was waiting for him at his office. Mr. Smith terminated Plaintiff immediately.

25. LHC Group Inc.'s decision to terminate was retaliation for reporting and opposing the company's false and fraudulent data submissions to CMS regarding the telephonic patient discharges and the false OASIS reporting information. Any other reason LHC Group, Inc. may assert for its decision to terminate Summers is false and/or pretextual.

26. Jake Summers continues to suffer damages related to his wrongful termination, including lost wages, lost employment benefits, and future wages and benefits. Mr. Summers may also

suffer future economic damages, including but not limited to loss of his house, real estate fees and costs associated with the sale of his house, and moving costs and expenses to be proven at trial.

27. Mr. Summers has also suffered significant non-economic damages, including severe emotional distress. Mr. Summers's emotional distress has physically manifested in objective symptoms, such as sleeplessness and depression. Mr. Summers was prescribed anti-depressants as a result of Defendants' outrageous and malicious retaliation.

## IV.

## COUNT ONE:

## WRONGFUL RETALIATION AND TERMINATION IN VIOLATION OF THE FEDERAL FALSE CLAIMS ACT (31 U.S.C. § 3730(h))

28. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

29. Plaintiff reported and opposed Defendant's practice of delivering false and/or fraudulent receipts of services to Medicare programs, for which the company sought payment and reimbursement, "without completely knowing that the information on the receipt is true." *See* 31 U.S.C. § 3729(a)(1)E).

30. Defendant's conduct can also be fairly and reasonably construed as creating "a false record or statements material to an obligation to pay or transmit money or property to the Government. . . ," as prohibited under 31 U.S.C. § 3729(a)(1)(G).

31. During his employment, Plaintiff reported his concerns regarding LHC Group's Medicare reporting improprieties in good faith, with the reasonable and good faith belief that the company's actions constituted willful, reckless, or deliberately ignorant false claims to the

United States government. Plaintiff thereby engaged in an activity protected under 31 U.S.C. § 3730(h).

32. LHC Group, Inc. knew Plaintiff was engaging in protected activities because Plaintiff reported and actively opposed the practice to his supervisors and managers.

33. LHC Group, Inc. retaliated against Summers, in violation of 31 U.S.C. §3730(h), when it summarily terminated Summers only two days after he refused to participate in the ongoing fraudulent activities, and reported the false claims in good faith.

34. As a direct and proximate result of Defendants' unlawful employment retaliation against Plaintiff, in violation of 31 U.S.C. §3730(h), Plaintiff suffered damages to be proven at trial.

35. Plaintiff seeks all forms of relief available under 31 U.S.C. §3730(h)(2), including but not limited to 2 times the amount of back pay, interest on the back pay, future lost wages and benefits, compensation for special damages (including moving costs and fees), any and all costs and fees incurred to obtain replacement employment, reinstatement, litigation costs, and reasonable attorneys' fees. Plaintiff's damages are continuous and ongoing, but will be proven with reasonable certainty at trial.

36. Plaintiff also seeks special and general damages related to the emotional distress and pain and suffering Defendant's adverse employment actions have caused.

37. Plaintiff has been required to retain the legal services of Hepworth Law Offices, in connection with the prosecution of this action, and requests that reasonable attorney's fees and costs be awarded at the contractual rate of $400.00 per hour under 31 U.S.C. § 3730(h)(2).

## COUNT TWO:

## WRONGFUL RETALIATION AND TERMINATION IN VIOLATION OF PUBLIC POLICY

38. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

39. Public policy provides an exception to the at-will employment doctrine and protects at-will employees who engage in protected activities, such as a refusal to commit illegal acts, performing important public duties such as reporting violations of safety codes and theft, or who exercise certain rights and privileges.

40. Summers engaged in a protected activity under Idaho law when he reported the fraudulent reporting practices being committed by LHC Group, Inc. by discharging patients over the telephone, but representing to CMS that the interaction occurred in-person and/or on-site.

41. Summers reported and opposed the fraudulent practice because it is inconsistent with state and federal laws and regulations, which require that "[t]he encoded OASIS data must accurately reflect the patient's status at the time of assessment." 42 C.F.R. § 484.45. Plaintiff also reasonably believed the false and inaccurate reports constituted violations of Title 03, Chapter 09 of the Idaho Administrative Code.

42. Public policy dictates that all patient care information that is transmitted to CMS for formulation of home health provider ratings be true and accurate because patients and consumers reasonably rely on the ratings to determine safe and superior care for themselves and their loved ones. Reporting false data and information to CMS is an issue of public health and safety, and is foreseeably likely to result in the waste of public funds.

43. During his employment, Plaintiff reported his concerns regarding LHC Group's Medicare

reporting improprieties in good faith, with the reasonable belief that the company's actions constituted willful, reckless, or deliberately ignorant false claims to the United States government and the public.

44. LHC Group, Inc. knew Plaintiff was engaging in protected activities because Plaintiff reported and actively opposed the practice to his supervisors and managers.

45. LHC Group, Inc. retaliated and wrongfully discharged Summers when it summarily terminated Summers only two days after he refused to participate in the ongoing fraudulent activities.

46. Plaintiff suffered damages as a direct and proximate result of Defendants' unlawful employment retaliation in an amount to be proven at trial.

47. Plaintiff seeks recovery of past and future lost wages, past and future employment benefits, recovery of litigation costs, and expenses, and/or equitable reinstatement into his former position.

48. Plaintiff also seeks special and general damages related to the emotional distress and pain and suffering Defendant's adverse employment actions have caused.

49. Plaintiff has been required to retain the legal services of Hepworth Law Offices, in connection with the prosecution of this action, and requests that reasonable attorney's fees and costs be awarded at the contractual rate of $400.00 per hour.

## COUNT THREE:

## BREACH OF IMPLIED WARRANTY OF GOOD FAITH AND FAIR DEALING

50. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

51. Summers and Defendant agreed to a valid employment contract under Idaho law.

COMPLAINT AND DEMAND FOR JURY TRIAL - 10

52. All contracts under Idaho law are subject to an implied covenant of good faith and fair dealing, which precludes either party from violating, nullifying or otherwise impairing the benefits of the contract in bad faith.

53. By terminating Summers for his good faith reporting and opposition to the false Medicare and Medicaid reporting practices, Defendant wrongfully impaired the benefits of Summers's lawful employment contract in bad faith.

54. As a result of Defendant's breach of the covenant of good faith and fair dealing, Summers has suffered damages, including but not limited to lost wages, lost employment benefits, emotional distress, and loss of reputation.

## COUNT FOUR

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ("NIED")

55. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

56. Defendant owed Summers a legal duty not to retaliate against him for his protected activities pursuant to the False Claims Act and/or Public Policy.

57. Defendant breached those duties when LHC Group, Inc. wrongfully terminated Summers.

58. Defendant's wrongful and outrageous retaliatory conduct directly and proximately caused severe emotional distress. Plaintiff's emotional distress has physically manifested itself in depression, sleeplessness, loss of identity, and other ongoing forms of physical manifestations to be proven at trial. Summers is currently under the treatment of a doctor and receiving medical care regarding his symptoms and condition.

59. Plaintiff is entitled to recover damages arising from this emotional distress, including doctor and therapist expenses, pharmaceutical expenses, and non-economic damages for pain and

suffering and emotional distress.

## V.

## **PLAINTIFF DEMANDS TRIAL BY JURY**

60.     Plaintiff demands trial by jury as a matter of right pursuant to U.S. Const. amend. VII, Art. I, Section 7 of the Constitution of the State of Idaho, and Fed. R. Civ. P. 38.

## VI.

## **ATTORNEY FEES**

61.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff has been forced to retain the legal services of Hepworth Law Offices to protect his rights. Plaintiff is entitled to an award of attorney fees pursuant to 31 U.S.C. § 3730(h)(2), and I.C. § 12-120(3) *et seq.* A reasonable attorney's fee should be calculated at $400.00 per hour for the time necessary to resolve this dispute. Plaintiff is otherwise entitled to costs and attorney's fees pursuant to Fed R. Civ. P 54 and in the furtherance of justice and equity.

## VII.

## **PRAYER FOR RELIEF**

WHEREFORE, Jake Summers requests judgment against the Defendants as follows:

a.      For past and future lost wages and benefits in an amount to be determined at trial by jury, but in an amount exceeding $75,000.00;

b.      For compensatory and consequential damages, including lost wages, to be determined at trial;

d.      For reinstatement to a full-time position at the rate of pay not less than his previous rate plus benefits and job protection and/or future lost wages instead of reinstatement;

COMPLAINT AND DEMAND FOR JURY TRIAL - 12

  e. For reinstatement of full fringe benefits and seniority rights;

  f. For an award for emotional distress damages in an amount to be determined at trial;

  g. For an award of interest (both pre- and post-judgment) at the highest lawful rate pursuant to 28 U.S.C. § 1961 and/or I.C. § 28-22-104;

  h. For an award of court costs, including expert witness fees as appropriate, and attorney fees.

  i. For such other legal or equitable damages as this Court deems just and appropriate.

DATED this 18th day of February, 2020.

       HEPWORTH LAW OFFICE

       By __/s/ *J. Grady Hepworth*_____
        Jeffrey J. Hepworth
        J. Grady Hepworth
        *Attorneys for Plaintiff*